UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JACOB JOHN WELD,

    Petitioner,   Civil Action No. 21-cv-13008

v.   HON. MARK A. GOLDSMITH

BECKY CARL,

    Respondent,
_____/

**OPINION & ORDER
(1) DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, (2) DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND (3) GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS**

Petitioner, John Jacob Weld, filed a pro se application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his conviction for two counts of first-degree criminal sexual conduct, Mich. Comp. L. § 750.520b(1)(a) and Mich. Comp. L. § 750.520b(2)(b). Petitioner was sentenced to twenty-five to fifty years in prison. For the reasons that follow, the petition for writ of habeas corpus is denied.

### I. BACKGROUND

Petitioner was convicted after a jury trial in Michigan's Emmet County Circuit Court. This Court recites verbatim the relevant facts upon which the Michigan Court of Appeals relied, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). See Wagner v. Smith, 581 F.3d 410, 413 (6th Cir. 2009):

> Defendant admitted that he sexually assaulted the 9-year-old victim during an approximately 90-minute long interview with law enforcement. Initially, defendant claimed that any sexual assault of the victim occurred while he was asleep, but, as the interview progressed, defendant admitted to repeatedly sexually assaulting the victim over a two-year timeframe in various states, including Michigan.

1

At trial, the victim's foster mother testified that the victim asked to speak to her privately and revealed that defendant had penetrated her and also rubbed himself on her. The victim testified that defendant sexually assaulted her approximately 30 times in Michigan. The victim also testified that defendant called her over to him and told her to pull down her pants. Sometimes, defendant assaulted her during the day. The victim opined that defendant "seemed like he knew what he was doing, [ ] his eyes were open, and he was talking to" her. The victim further testified that defendant told her not to tell anyone. Additionally, the victim testified that defendant earlier assaulted her in Las Vegas, Nevada; Oklahoma; and Texas.

The law enforcement officers, who had interviewed defendant, testified about the interview and their investigation. Defendant's video-recorded interview was played for the jury. Therein, in describing his most recent assault, defendant admitted that, at around 9 p.m., he woke up "horny," and thought that he told the victim, "[d]on't say anything to anybody." Defendant described lifting the victim's legs up over his hip after she removed her pajama bottoms and underwear. Defendant admitted that he penetrated the victim's vagina with his penis for about five minutes. On a drawing, defendant indicated the extent of his penetration.

Shortly after these admissions, one of the troopers informed defendant that he was under arrest. Defendant received and waived his Miranda rights. Defendant ultimately confessed to three penetrations—one in Oklahoma and two in Michigan. Defendant further reported that he twice sexually assaulted the victim in Las Vegas. Defendant described these earlier instances as involving him rubbing his penis on the victim's vagina without penetration.

Defendant confessed that his first Michigan penetration occurred while the sun was still up. He stated that he became aroused when the victim touched him. Defendant further confessed that he had previously told the victim to touch him and had taught her to "rub" his private part.

At the conclusion of the interview, defendant provided a hand-written statement, reading: "It happened five times, once in Oklahoma; two in Vegas; two times in Michigan. First two times was rubbing; three times penetration." Defendant told one of the troopers that he "never meant for it to happen .... [I]t's hard to face I did it." However, defendant added that the other interviewing trooper was "right" and that defendant needed help.

During the interview, defendant also admitted to viewing pornography on his cellular telephone and he consented to a law-enforcement search of this device. Forensic investigation revealed that defendant visited a number of sites on

2

Pornhub.com, including two involving sleepwalking. During the interview, defendant claimed that he was not into child pornography and that the sites he had viewed involved role-playing adults.

While in jail awaiting trial, defendant also made several telephone calls to his mother that were recorded and played for the jury. On the day of his arrest, defendant admitted to molesting or penetrating the victim, but claimed to be asleep. In his second call on that day, defendant admitted that "it's happened more than once[.]" Two days later, defendant told his mother: "It wasn't penetration every time. It wasn't 'til the last time when I was sleeping." Nevertheless, defendant again admitted that the assaults happened once in Oklahoma, twice in Nevada, and twice in his mother's home. In a subsequent call, defendant expressed his desire to plead guilty to lesser charges, and, if that failed, to proceed to trial "'[c]uz ... either way I'm guilty .... Either way I'm guilty." Defendant later explained: "I admitted everything, which I shouldn't have done, but, you know, I'm honest.... And with me being honest that just made their job easier." Defendant also lamented the potential 25-year penalty he was facing, complaining that murderers received lesser terms of incarceration. Defendant added, "I didn't commit hardly anything, but, you know, I mean it's still heinous what I did." Defendant urged his mother to search for a good lawyer, one who would fight for him, and, again expressed his desire to plead guilty to lesser charges. In his final call, defendant remarked that the "Olympic guy," presumably referencing Dr. Larry Nassar, deserved the 25-year mandatory-minimum penalty for molesting "like 500 girls." Unlike defendant, who only "did it once."

Despite defense counsel's request, the prosecution was unwilling to offer the plea deal that defendant sought. The case proceeded to trial and the jury convicted defendant of two counts of CSC-I.

After defendant appealed, he filed a motion for remand, contending that his second court-appointed trial counsel was ineffective for failing to move to suppress his confession and for failing to request a jury instruction on the voluntary-act requirement given defendant's assertions that his assaults occurred during unconscious activity, namely, sleepwalking. This Court denied defendant's motion without prejudice. People v. Weld, unpublished order of the Court of Appeals, entered November 13, 2019 (Docket No. 348373).

People v. Weld, No. 348373, 2020 WL 6110637, at *1–*2 (Mich. Ct. App. Oct. 15, 2020).

(punctuation modified).

3

Petitioner's conviction was affirmed on appeal. People v. Weld, 956 N.W.2d 177 (Mich. 2021).

This petition for habeas corpus followed. Petitioner seeks habeas relief on the following grounds: (i) trial counsel was ineffective for failing to move to suppress his confession that was taken in violation of his Miranda rights, (ii) trial counsel was ineffective for failing to request a voluntary act instruction, and (iii) the cumulative effect of trial counsel's ineffective assistance deprived Petitioner of a fair trial.

## II. STANDARD OF REVIEW

Title 28 of the United States Code Section 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405–406 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme

4

Court] to the facts of a prisoner's case." Id. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 410–411. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). To obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of the claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 103.

### III. ANALYSIS

#### A. Ineffective Assistance of Counsel

Petitioner seeks habeas relief on the following grounds: (i) trial counsel was ineffective for failing to move to suppress his confession that was taken in violation of his Miranda rights, (ii) trial counsel was ineffective for failing to request a voluntary act instruction, and (iii) the cumulative effect of trial counsel's ineffective assistance deprived Petitioner of a fair trial.

To establish ineffective assistance of counsel under federal constitutional standards, a defendant must satisfy a two-part test. Strickland v. Washington, 466 U.S. 668, 687 (1984). First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. Id. In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. Id. at 689. In other words, a defendant must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. Id. Second, the defendant must show that such performance

5

prejudiced his defense. Id. at 687. To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

Petitioner first argues that trial counsel was ineffective for failing to move to suppress his statement to the police because he was not advised of his Miranda rights until mid-way through the interview and after he had already made incriminating remarks. Petitioner argues that Miranda warnings should have been given to him by the police at the outset of the interview because he was subjected to a custodial interrogation from the beginning of the interview.

The Michigan Court of Appeals rejected Petitioner's claim at length:

> Defendant concedes that his interview was not custodial until the detective joined in. The small interview room at the state police post contained a round table that abutted a wall and two chairs. About thirty minutes lapsed with defendant admitting that it was possible that he had unknowingly sexually assaulted the victim as he slept. The trooper offered defendant an opportunity for a bathroom break as the trooper was going to get water; he also offered the same to defendant. At first, defendant declined the trooper's offer to use the restroom, but, on reconsideration, he used the facilities before voluntarily returning to the interview room alone. The detective brought in a third chair, sitting closer to defendant. It appears that the uniformed trooper and the detective were wearing holsters housing their service weapons. Defendant contends that the interview turned custodial as the detective's chair "blocked" the door, both troopers had weapons, and the detective's questioning was accusatory. As a result, defendant argues that the troopers were required to inform him of his Miranda rights. We disagree.

Weld, 2020 WL 6110637, at * 3.

The Michigan Court of Appeals concluded that Petitioner was not in custody when he first spoke with the police. Therefore, the police were not required to advise him of his Miranda rights, for several reasons: (i) Petitioner drove himself to the police station after the trooper called Petitioner and arranged for him to come into the station for an interview, (ii) Petitioner's interview was only of a ninety-minute duration, (iii) the trooper conducting the interview informed Petitioner from the onset that he was not under arrest and that he was free to leave at any time, (iv) the

6

detective testified that his method of interrogation did not involve him yelling or raising his voice and the Michigan Court of Appeals' review of the interview videotape confirmed this, (v) Petitioner was not physically restrained because he was not handcuffed, nor was he escorted to the police station, (vi) Petitioner left the interview room to use the bathroom and voluntarily returned before being joined by the trooper and detective, (vii) although the trooper and detective wore their service weapons, they remained holstered, and (viii) although the detective's chair was by the door, the door remained unlocked and Petitioner knew from what the trooper told him and his experience in leaving the room earlier that he still had the choice to do so. Weld, 2020 WL 6110637, at *4–*5. The Michigan Court of Appeals concluded that because there was no basis to suppress the statement to the police, counsel was not ineffective for failing to file a motion to suppress it. Id. at *5.

The Michigan Court of Appeals further concluded that Petitioner was not prejudiced by trial counsel's failure to move to suppress the confession in light of the additional compelling evidence of Petitioner's guilt apart from the confession:

> In this case, even if defendant's confession was suppressed, there was still overwhelming evidence to convict defendant of two counts of CSC-I against the victim. The victim testified that defendant sexually assaulted her regularly—approximately thirty times. The victim also testified that defendant told her not to tell anyone what had happened, and that he called her over and told her to pull down her pants. The assaults occurred in the victim's grandmother's living room, on an air mattress that defendant used as a bed, even though a nearby pull-out couch served as a bed for the victim and her sister. Moreover, defendant repeatedly admitted to sexually assaulting the victim in recorded telephone conversations with his mother, and defendant told his mother that there were five assaults in three separate states. Additionally, forensic analysis of defendant's cellular telephone revealed numerous pornographic sites accessed by defendant, demonstrating defendant's interest in sexual relations while "sleepwalking." Therefore, it is not reasonably probable that a different result would have obtained even if defense counsel successfully obtained suppression of defendant's confession after the detective joined the interview in light of defendant's numerous, untainted admissions.

7

Weld, 2020 WL 6110637, at *5.

A prosecutor may not use a defendant's statements that stem from custodial interrogation unless the prosecutor can demonstrate the use of procedural safeguards which are effective to secure a defendant's privilege against self-incrimination. Miranda v. Arizona, 384 U.S. 436, 444 (1966). Unless other means are devised to inform a suspect of his right to silence and a "continuous opportunity to exercise it," the following warnings are required to be given to a suspect:

> (i) The person must be warned that he or she has a right to remain silent;
> (ii) that any statement he does make may be used against him; and
> (iii) that he has a right to the presence of an attorney, either appointed or retained.

Miranda, 384 U.S. at 444.

Police officers are not required to administer Miranda warnings to every person whom they question, nor are officers required to administer Miranda warnings simply because the questioning takes place in a police station or because the questioned person is one whom the police suspect. Oregon v. Mathiason, 429 U.S. 492, 495 (1977). Instead, Miranda warnings are required "only where there has been such a restriction on a person's freedom as to render him or her 'in custody.'" Id. "Custody," for purposes of Miranda, requires a "significant deprivation of freedom." See Mason v. Mitchell, 320 F.3d 604, 632 (6th Cir. 2003).

Two discrete inquiries are essential to determining whether a criminal suspect was in custody at time of interrogation and therefore entitled to Miranda warnings: first, what were the circumstances surrounding the interrogation, and second, given those circumstances, would a reasonable person have felt that he or she was not at liberty to terminate the interrogation and leave. See Thompson v. Keohane, 516 U.S. 99, 112 (1995).

The evidence at trial establishes that Petitioner voluntarily showed up at the police station. Petitioner was not arrested at that point or placed in handcuffs or otherwise detained. The door to

8

the interrogation room was unlocked. Petitioner was not told he was a suspect or that he was not free to leave. In fact, Petitioner was allowed to leave the interrogation room to use the bathroom. Under the circumstances, Petitioner was not in custody, within the meaning of Miranda, when he initially spoke with the police. See Biros v. Bagley, 422 F.3d 379, 389–390 (6th Cir. 2005); Mason, 320 F.3d at 632. Moreover, the interview lasted only about ninety minutes and the officers did not brandish their weapons or make any show of force. This also militates against a finding that Petitioner was in custody within the meaning of Miranda. See United States v. Mahan, 190 F.3d 416, 422 (6th Cir. 1999).

Without any significant evidence suggesting that Petitioner was subjected to custodial interrogation within the meaning of Miranda when he initially spoke with the detective and the trooper at the police station, "a fairminded jurist could conclude that counsel acted reasonably in choosing not to move for suppression" of Petitioner's statement. See Wilkens v. Lafler, 487 F. App'x. 983, 993 (6th Cir. 2012). "Given the dearth of record evidence suggesting custody, a fairminded jurist could conclude that [petitioner's] counsel acted competently in focusing his efforts elsewhere." Id. at 994. Moreover, Petitioner is unable to show that he was prejudiced by counsel's alleged ineffectiveness, "because, even if his counsel had filed the motion to suppress, the trial court would have almost certainly denied it as meritless." Id.

Petitioner, however, also claims that the statement should have been suppressed because the police engaged in an impermissible "Miranda-in-the-middle play" and had Petitioner repeat his incriminating statements that he initially made before he had been advised of his Miranda rights.

The Supreme Court has held that a midstream recitation of Miranda warnings, after a police interrogation commenced without the police first advising the defendant of his rights, did not

9

comply with Miranda's constitutional requirement. Missouri v. Seibert, 542 U.S. 600, 604–606 (2004). Thus, any statement made by a defendant after being given Miranda warnings in the middle of an interrogation is inadmissible.

The holding in Seibert does not apply if the first police interview was non-custodial. See United States v. Ray, 690 F. App'x. 366, 371–372 (6th Cir. 2017) (Seibert test applied only when the defendant was subject to custodial interrogation at his home prior to Miranda warnings). Seibert did not address the issue of police questioning during an investigative detention but dealt rather with true custodial questioning in violation of Miranda. Seibert is therefore distinguishable. See Johnson v. Warren, No. 20-1071, 2020 WL 8254336, at *3 (6th Cir. Sept. 1, 2020) (state court reasonably determined that Seibert did not apply to petitioner's case because petitioner was not in custody when he made the pre-Miranda statements: "Reasonable jurists would not debate that conclusion because Seibert's holding is based on custodial interrogation both before and after Miranda warnings."); Sturm v. Superintendent of Indian River Juv. Corr. Facility, 514 F. App'x 618, 625 n.2 (6th Cir. 2013) ("Because Sturm was not in custody when he first confessed, there was nothing improper in Warden's earlier failure to Mirandize that needed to be 'cured.' Seibert applies only to a statement given during prewarning custodial interrogation."); United States v. Courtney, 463 F.3d 333, 337 (5th Cir. 2006) (when defendant's first statement does not violate Miranda, Seibert test does not apply to a post-Miranda statement); United States v. Kiam, 432 F.3d 524, 531 (3d Cir. 2006) (same); United States v. Evans, No. 18-20421, 2019 WL 458165, at *7 (E.D. Mich. Feb. 6, 2019) ("Because the pre-Miranda questioning was non-custodial, the Seibert midstream Miranda warning test does not apply.").

Based on the foregoing, there was no reasonable probability that a motion to suppress based on an alleged Miranda violation would have succeeded in this case. Petitioner was not denied

10

effective assistance by his trial counsel's failure to move for the suppression of his statement on this basis. See Koras v. Robinson, 123 F. App'x 207, 210–212 (6th Cir. 2005).

Finally, Petitioner was not prejudiced by counsel's failure to move to suppress the confession, in light of the overwhelming evidence of Petitioner's guilt apart from his confession. See Crawley v. Curtis, 151 F. Supp. 2d 878, 885 (E.D. Mich. 2001) (state-court determination that counsel was not ineffective in failing to move to suppress statement that was taken in violation of Miranda was a reasonable application of Strickland, such that petitioner was not entitled to habeas relief, where there was evidence from which state court could reasonably find that petitioner was not prejudiced, given overwhelming evidence of his guilt apart from his statement). Petitioner is not entitled to habeas relief on his first claim.

Petitioner in his second claim argues that counsel was ineffective for failing to request an instruction that Petitioner's sexual assaults had to be the result of a voluntary act in order for the jury to convict him. Petitioner initially told the police that he committed the assaults while he was "sleeping" or "asleep." Petitioner argues that being asleep or sleepwalking rendered him incapable of recalling his actions. Petitioner claims that sexsomnia, sexual activity during sleep, is a recognized phenomenon and provides an affirmative defense to the charges against him. Petitioner notes that trial counsel argued this point to the jury but was ineffective in failing to request a jury instruction to support it.

The Michigan Court of Appeals rejected this claim:

> However, even viewing defendant's claim as one involving an involuntary act committed during sleep, we conclude that defendant has not demonstrated that counsel's performance was deficient, and, even if he had, he has not shown that there is a reasonable probability of a different outcome. Defense counsel's failure to request a non-standard jury instruction that defendant's sexual assault must be voluntary was not deficient as the evidentiary basis for giving such an instruction to the jury was lacking. Putting it bluntly, defendant retracted his initial claim that he was sleepwalking, a state during which he could not recall engaging in a sexual

11

> act. Instead, consistent with the victim's testimony, defendant admitted to numerous conscious sexual assaults to the police, in great detail, and to his mother. Moreover, consistent with the victim's testimony that daytime sexual assaults occurred, defendant confessed to a daytime sexual penetration regarding one of the two sexual penetrations charged in this case. Furthermore, again consistent with the victim's testimony, defendant admitted to numerous sexual penetrations or touchings in three states over an extended period. Defendant also admitted to being sexually aroused by the victim's touches and to previously instructing the victim on how to touch him sexually. Plus, defendant viewed several pornographic materials, including two involving sexual relations while "sleepwalking." Given all of this, counsel's request for an instruction would have been without factual support and failed. And, even if we agreed that defense counsel's failure to request such an instruction was deficient, we conclude that defendant has not met his burden of demonstrating that a different outcome at trial was reasonably probable for the same reasons we have just discussed.

Weld, 2020 WL 6110637, at * 7 (punctuation modified).

Another judge in this district rejected a claim that counsel was ineffective for failing to obtain and present an expert witness to testify about sleep disorders to present a defense that the habeas petitioner may have committed a sexual assault while asleep or unconscious and that therefore petitioner's criminal intent was negated. See Petush v. Renico, No. 2:05-cv-74918, 2008 WL 596833, at * 3 (E.D. Mich. Feb. 29, 2008). In rejecting the claim, the judge noted "that at least one other federal court has rejected a similar claim that counsel was ineffective for failing to explore an unconsciousness defense, by noting that such a defense 'is virtually never effective.'" Id. (citing Greenfield v. Gunn, 556 F.2d 935, 937 (9th Cir.1977)). The judge concluded: "[I]n light of the fact that the victim testified that Petitioner actually pulled his shorts down and began rubbing his penis against the victim's leg, Petitioner has failed to come forward with any evidence suggesting that the presentation of expert testimony on an unconsciousness defense might have resulted in a different outcome, so as to support a finding that trial counsel was ineffective." Id.

In the present case, Petitioner retracted his sleepwalking claim and admitted to the police and his mother that he had sexually assaulted the victim. Petitioner was able to provide specific

12

details of the sexual assaults, which would negate a finding that he was asleep at the time of the assaults. The victim testified that Petitioner appeared awake and alert during the sexual assaults. Several of the assaults took place during the day. Counsel was not ineffective for failing to request a voluntary-act instruction because there was no evidence to support a sleepwalking or sexsomnia defense. See, e.g., Cathron v. Jones, 77 F. App'x 835, 845 (6th Cir. 2003) (counsel was not ineffective in failing to request an accessory-after-the-fact jury instruction where the evidence did not support such an instruction). Petitioner is not entitled to relief on his second claim.

Petitioner lastly argues that even if the individual ineffective assistance of counsel claims do not merit relief, the cumulative effect of these errors entitles him to habeas relief.

The individual claims of ineffectiveness alleged by Petitioner are all essentially meritless. Petitioner cannot show that the cumulative errors of his counsel amounted to ineffective assistance of counsel. Seymour v. Walker, 224 F. 3d 542, 557 (6th Cir. 2000); Alder v. Burt, 240 F. Supp. 2d 651, 655 (E.D. Mich. 2003). Petitioner is not entitled to relief on his third claim.

For the reasons stated above, the Court denies the petition for writ of habeas corpus.

**B.**     **Certificate of Appealability and IFP**

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. See 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. See Slack v. McDaniel, 529 U.S. 473,

484–485 (2000). "A petitioner satisfies this standard by demonstrating that. . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003). In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. Id. at 336–337.

Having considered the matter, the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right with respect to any of his claims. Accordingly, a certificate of appealability is not warranted in this case.

Although this Court denies a certificate of appealability to Petitioner, the standard for granting an application for leave to proceed in forma pauperis (IFP) is a lower standard than the standard for certificates of appealability. Foster v. Ludwick, 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002) (citing United States v. Youngblood, 116 F. 3d 1113, 1115 (5th Cir. 1997)). While a certificate of appealability may be granted only if a habeas petitioner makes a substantial showing of the denial of a constitutional right, a court may grant IFP status if it finds that an appeal is being taken in good faith. Id. at 764–765; 28 U.S.C. § 1915(a)(3); Fed. R. App. 24 (a). "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits. Foster, 208 F. Supp. 2d at 765. Although jurists of reason would not debate this Court's resolution of Petitioner's claims, the issues are not frivolous; therefore, an appeal could be taken in good faith and Petitioner may proceed in forma pauperis on appeal.

## V.  CONCLUSION

For the reasons stated above, (i) the petition for writ of habeas corpus is denied, (ii) a certificate of appealability is denied, and (iii) Petitioner is granted leave to appeal in forma pauperis.

SO ORDERED.

Dated:  April 17, 2024  
Detroit, Michigan

s/Mark A. Goldsmith  
MARK A. GOLDSMITH  
United States District Judge